# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:17-cr-00008-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> JOYCE KAY GODWIN, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's Motion for Compassionate Release [Doc. 50] and the Defendant's Motion seal Defendant's Medical Records [Doc. 52].

## I. BACKGROUND

In April 2017, the Defendant Joyce Kay Godwin pled guilty to three counts of bank fraud, three counts of aggravated identity theft, and one count of possession of stolen mail. [Docs. 9, 11]. In December 2017, the Court sentenced the Defendant to a total term of 82 months' imprisonment, to be followed by three years of supervised release. [Doc. 22]. The Defendant is

currently housed at FMC Carswell, and her projected release date is July 6, 2023.[1]

The Defendant filed her first motion for compassionate release in April 2020, alleging that her underlying health conditions of COPD, asthma, stage 3 kidney disease, and epilepsy placed her at a higher risk for severe illness from COVID-19, and that her particular vulnerability to the illness was an extraordinary and compelling reason for her release. [Doc. 28]. The Court denied the Defendant's motion without prejudice on May 11, 2020, for failing to exhaust her administrative remedies. [Doc. 29]. The Defendant filed her second motion for compassionate release on August 10, 2020, alleging the same conditions. [Doc. 30]. After considering the Government's response [Doc. 32], the Court denied the Defendant's motion on the grounds that she had failed to establish an extraordinary and compelling reason for a sentence reduction and because the § 3553(a) factors continued to weigh in favor of her incarceration. [Doc. 36]. The Defendant appealed this Order [Doc. 38], and the Court of Appeals for the Fourth Circuit affirmed [Doc. 41]. The Defendant then moved the Court to reconsider the Order denying her relief.

---

[1] See https://www.bop.gov/inmateloc/ (last visited Feb. 17, 2022).

[Doc. 42]. The Court denied the Defendant's motion on July 20, 2021. [Doc. 44].

On January 7, 2022, the Defendant—now represented by counsel—filed the present motion, which is her third request for compassionate release. [Doc. 50]. For grounds, the Defendant argues that the COVID-19 pandemic and her risk of severe reinfection[2] with the virus, as compounded by her underlying health conditions, constitute extraordinary and compelling reasons for her release. [Doc. 50].

The Court ordered the Government to respond to the Defendant's motion. [Text-Only Order entered Jan. 7, 2022]. The Government filed its Response on January 31, 2022. [Doc. 54]. The Defendant filed a Reply on February 9, 2022. [Doc. 55]. Accordingly, this matter is ripe for disposition.

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of her sentence for "extraordinary and compelling

---

[2] The Defendant contracted COVID-19 in July 2020, prior to the filing of her second motion for compassionate release. [See Doc. 36 at 5].

3

reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Here, the Government contends that the Defendant has failed to demonstrate that she exhausted her administrative remedies prior to filing this third motion for relief.  [Doc. 54 at 3].  Specifically, the Government notes that although the Defendant submitted a BOP document dated September 28, 2021, acknowledging BOP's receipt of a reduction in sentence (RIS) request, she did not provide any documentation indicating the warden's decision regarding her request.  [Id. at 4].  With her Reply, the Defendant submits a copy of the warden's response denying her request for a reduction in sentence.  [Doc. 55-1].  As it appears that the Defendant has now provided the documentation that the Government complained was lacking, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by

4

the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the application notes to this policy statement set forth the various circumstances under which the Court can determine that "extraordinary and compelling reasons exist," including: the medical condition of the defendant, the age of the defendant, certain family circumstances, or other reasons. This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions

under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant renews her argument that her chronic medical conditions—including obesity, chronic obstructive pulmonary disease (COPD), and chronic kidney disease—place her at a significant risk of serious illness from COVID-19. [Doc. 50 at 5]. She further argues that since contracting COVID in July 2020, she has experienced headaches, body aches, a cough, shortness of breath, and fatigue, and that these "long COVID" symptoms have exacerbated her sleep apnea and seizures. [Id. at 6]. She also argues that she has become more obese since contracting COVID, and that her blood pressure has increased to the point that she now has hypertension. [Id. at 7].

While the Defendant's health conditions are undoubtedly serious, the Defendant does not assert in her motion that these conditions are uncontrolled or that they substantially diminish her ability to provide self-care

6

while incarcerated. With respect to the risks posed by the coronavirus, the BOP medical records indicate that the Defendant has now been fully vaccinated against the coronavirus.[3] [See Doc. 54-1]. According to the CDC, vaccine effectiveness studies indicate that the mRNA COVID-19 vaccines reduce the risk of serious illness or death among people who are fully vaccinated.[4]

The Defendant also argues that her risk of serious illness remains high, despite being vaccinated, because of the high number of cases of COVID among inmates and staff at FMC Carswell caused by the omicron variant. [Doc. 50 at 8]. At the time of the filing of her motion in early January 2022, the Defendant points out that 134 inmates and 26 staff members were infected. [Id.]. The Court notes, however, that less than six weeks later, the number of cases among inmates at FMC Carswell had dropped to 48, with 49 cases among staff members.[5] These numbers reflect not only the typical

---

[3] The Defendant argues her risk of serious illness will continue to remain high because she has not yet received her booster shoot. [Doc. 50 at 8-9]. As the Government points out, however, it is BOP policy to provide a booster dose of the COVID vaccine upon request of the inmate, and there is no indication in the Defendant's BOP medical file that she has requested one. [Doc. 54 at 7].

[4] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Feb. 17, 2022).

[5] See https://www.bop.gov/coronavirus/ (last visited Feb. 17, 2022).

"spike" of the omicron variant but also reflect the significant measures that BOP has taken to protect the health of its inmates from the virus. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, BOP has undertaken to vaccinate its entire inmate population, which has provided inmates further protection from the virus. Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders.

While the Defendant still faces some risk of reinfection (as do all of those who have been vaccinated against the virus), the fact that she faces a slight risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief she requests. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); see also United States v. Lemons, 15 F. 4th 747, 751 (6th Cir. Oct.

8, 2021) ("a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction….[T]o the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19."). Because the Defendant is vaccinated and thus generally protected from the most serious harms related to COVID-19, the Defendant's chronic health conditions, either singly or in combination, do not constitute an extraordinary and compelling reason justifying her early release.

Even if the Defendant had demonstrated "extraordinary and compelling reasons" for her release, the Court must still consider the § 3553(a) sentencing factors "to the extent that they are applicable" in deciding whether to reduce a defendant's sentence in the exercise of its discretion. See United States v. Jenkins, 22 F. 4th 162, 170 (4th Cir. Dec. 29, 2021) (citing 18 U.S.C. § 3582(c)(1)(A)). In this regard, the Defendant argues that her time in prison has promoted respect for the law and provided just punishment for her offenses. [Doc. 50 at 10]. She offers character letters, which document the positive changes that the Defendant has implemented while incarcerated. [Docs. 50-3, 50-4]. She notes that she has engaged in a

9

number of educational courses, including a paralegal program and a drug abuse education course, and that she is currently enrolled in the Residential Drug Abuse Program (RDAP). [Doc. 50 at 10-11; Docs. 50-5, 50-6].

While the Defendant's progress and rehabilitation is commendable, the Court concludes that analysis of the relevant § 3553(a) factors continue to weigh in favor of her continued incarceration. As the Court previously found [Doc. 36 at 7], the Defendant has a significant criminal history, including convictions for theft of mail, forgery, identity theft, and fraud. [Doc. 19 at 9-15]. She also escaped from custody, absconded from supervision, and committed new crimes while under court supervision. [Id.]. Despite her long history of similar state and federal felony offenses, she received only five criminal history points at sentencing, thus placing in her criminal history category III, because several of her prior offenses were simply too old to be counted under the Guidelines. To reflect the inadequacy of the criminal history score, the Court imposed an above-guidelines sentence for the Defendant's current offenses. [Doc. 23 at 2]. Given her extensive criminal history, and the need to protect the public from further crimes, the Court concludes that the reasons stated by the Defendant in her motion are insufficient to warrant her early release.

For all these reasons, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors weigh in favor of her continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

**B.     Motion to Seal**

The Defendant moves the Court for leave to file under permanent seal BOP medical records in support of her Motion for Compassionate Release. For grounds, counsel states that the medical records contain highly personal and confidential material concerning the Defendant's medical conditions. [Doc. 52].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Defendant's motion. The Defendant filed her motion on January 7, 2022, and such motion has been accessible to the public through

the Court's electronic case filing system since that time. Further, the Defendant has demonstrated that the subject medical records contain sensitive information and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See <u>United States v. Harris</u>, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Compassionate Release [Doc. 50] is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Seal Defendant's Medical Records [Doc. 52] is **GRANTED**, and the Defendant's medical records [Doc. 51] shall remain under seal until further Order of the Court.

**IT IS SO ORDERED.**

Signed: February 21, 2022

Martin Reidinger
Chief United States District Judge

13

Case 1:17-cr-00008-MR-WCM   Document 56   Filed 02/22/22   Page 13 of 13